LEWIS v. RICHARDS LOAN CO. et al.—75 S. W. (2d) 821.

Eastern Section. April 26, 1934.

Petition for Certiorari denied by Supreme Court, October 13, 1934.

Child & Ailor, of Knoxville, for appellant.
Webb & Baker, of Knoxville, for appellees.

PORTRUM, J.   This suit was filed to enjoin the prosecution of an unlawful detainer warrant issued to put the defendant Richard Loan Company, a trade-name under which John Richards operates a small loan business under the Public Acts of 1925, chapter 153, in the possession of a house and a small boundary of land owned by the complainant, who had executed a trust deed to secure a loan of $200, and which had been foreclosed.   The bill alleges that on March 2, 1932, the complainant borrowed from the loan company $200 for which she and her husband executed their note, and which note provides for the payment of interest and fees at the rate of 3½ per cent. per month, a total of 42 per cent. a year, and to secure the note the complainant executed a trust deed covering two small tracts of land, and that the defendant deducted from said loan the total of $83.30 as follows:

Recording mortgages ...................................$ 2.00
H. L. Lewis loan ....................................... 75.00
Delius .................................................. 2.50
1931 taxes ............................................. 3.80
Pro rata insurance .................................... 5.00

—which left a balance of $111.70 which was paid to the complainant upon the loan.

The complainant insists the fair value of this property is $750, but the defendant says that he appraised the property before the loan at the sum of $250. The note was payable $3 per month as principal, "and in addition interest and fees at the above stated rate on said principal." The complainant made payments to the amount of $7 upon this note, which perhaps covered two monthly payments, and the defendant gave her credit on the principal for $5 refunded for insurance when the insurance company declined to accept the risk.   In July following the defendant declared the loan in default, advertised and sold the premises, and became the purchaser at the sum of $100.   The defendant then instituted the unlawful detainer suit to dispossess the complainant and gain possession.

The bill further charges:

"The complainant is illiterate, and not experienced in business matters, having spent her life rearing sixteen children.   That the defendants are experienced and shrewd, taking advantage of the

complainant's inexperience, cheating, wronging and defrauding the complainant and attempting to wrongfully deprive the complainant of her home." In that "defendants wrongfully, unlawfully, and in strict violation of the laws of the State of Tennessee, and especially the laws under which the defendants are operating in that the defendants deducted at the time of said loan $2 to record a mortgage, $2.50 for examination of title, and $5 for pro ration of insurance, each of which is a separate and distinct violation of the letter and spirit of the law, and especially in violation of Sections 6733 and 6734 of the Code of the State of Tennessee adopted January 1, 1932.

"That the defendants did thus violate the statutes of the State of Tennessee by wrongfully and unlawfully making said deductions, thus rendering said loan and contract and note void, and making it unlawful for the defendants to collect or receive any principal or charges whatsoever by reason of said loan."

The answer admits these charges or deductions, but denies that this was any violation of the statute under which it was operating. The chancellor dismissed the bill.

In this case the defendant deducted from the payment to the complainant $2 for recording the deed, and $2.50 for examining the title, the latter sum was paid to one Delius, an examiner who had a desk in the defendant's office, and who had examined as many as four hundred titles for the defendant. Upon this loan, in addition to the 6 per cent. interest, the defendant had charged a fee of 3½ per cent. per month which was contemplated to cover the expense of the loan and the investigation of the security. Sections 6733 and 6734 of the Code of 1932 provides:

"Every person, licensed hereunder, may lend any sum of money not exceeding in amount the sum of three hundred dollars, and may contract for, charge and receive thereon interest not to exceed six per cent. per annum; provided, however, that the licensee may charge and receive for investigating the moral and financial standing of the applicant, investigating the security, titles, etc., and for other expenses and losses of every nature whatsoever, and for closing the loan, a fee not above three per cent. per month of the principal sum lent over the term of the loan, both interest and fee to be computed on the unpaid balance of the principal due at the end of each month over the life of the loan.

"Said fee shall not be payable in advance, but shall be made and computed on unpaid balances; and in addition to the fees provided for, no further charges or amount whatsoever shall be directly or indirectly charged, contracted for or received, except the lawful fees, if any, actually and necessarily paid out to any public officer on any instrument securing the loan, which fees may be collected

when the loan is made or at any time thereafter; provided, however, that all notarial fees, including those for the acknowledgment of deeds and other papers and for the recording of same, shall be at the expense of the licensee, and under no circumstances shall the borrower be required to pay any notarial fees whatsoever. If fees, interest or charges in excess of those so permitted are charged, contracted for or received, the contract or loan shall be void, and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever.''

Under the above-quoted section 6733, it is provided that the investigation of title or the expense therefor shall be included in the 3½ per cent. charged upon the monthly balance; so the exacting of this charge by the licensee from the borrower in advance was a violation of this section.

■ The charge of $2 for the registration fee is not so clear, section 6734 above quoted is confusing, and, in view of the holding of this court in the case of McRae v. Knoxville Finance Co., 10 Tenn. App., 79, we do not think, if under a proper construction of the law the fee is not authorized, that the loan would be forfeited, for it does not appear that the licensee intentionally exacted an unlawful fee. He can act in good faith upon a holding of the court.

■ We·understand that only willful violation of the act forfeits the loan. May Co. v. Anderson, 156 Tenn., 216, 300 S. W., 12. This is a uniform law, and by the weight of authorities, in the construction of this act, willfulness is held to be synonymous with intent.

''The intent which enters into and is essential to constitute usury is simply the intent to take and reserve more than permitted by law for the loan. While there are statements to the effect that to constitute usury the taking must be willfully and knowingly corrupt, and that, where the statute requires that the interest be knowingly taken or charged, there can be no usury unless the excessive interest is charged or received with the knowledge that it is prohibited by law, by the weight of authority usurer's intent is implied if excessive interest is intentionally taken or received. Mistakes in calculations or other mistaken facts made in good faith, resulting in the lender's unintentionally charging or receiving something in excess of what he is allowed by law, negatives the existence of the unlawful intent necessary to constitute usury. If the mistake be as to the legal right to acquire the excessive payment, which is received in good faith, there is nevertheless usury. Ignorance of the law excuses no one, not even an honest money lender.'' Usury, 66 C. J., sec. 68 et seq., p. 177.

■ The only error justifying this charge for the examination of the title is one of law, for the examiner had a desk within the de-

256

fendant's office, and, if not his employee, received a fee from the defendant, which it then intentionally exacted from the borrower, and this had taken place in as many as four hundred instances. And there was little excuse for this error, for on the back of the note is printed the section of the act requiring the licensee to pay the fee for the examination of the title, and the language in this portion of the act is not ambiguous. If the licensee can escape a willful intent by an unwarranted construction of the act, then he substitutes himself for the courts, exercising the function of the courts, and his construction nullifies the act.

We are of the opinion that there was a purposeful exaction of an unlawful fee, without reasonable excuse, which establishes a willful intent, and the law was violated. The injunction should have been perpetuated enjoining the prosecution of the unlawful detainer suit, the bill sustained, and the trust deed removed as a cloud upon the complainant's title, and the note declared void. A decree will be entered here granting this relief. The appellee will pay the cost of this proceedings.

Snodgrass and Thompson, JJ., concur.